# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs April 23, 2013

## RUBEN PIMENTEL v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Warren County**
**No. F-9586     Larry B. Stanley, Jr., Judge**

---

**No. M2011-01309-CCA-R3-PC - Filed August 21, 2013**

---

On June 3, 2005, Petitioner, Ruben Pimentel, pled guilty to first degree murder and two counts of aggravated arson. He filed a petition for post-conviction relief almost four years later on March 9, 2009. The trial court summarily dismissed the petition because it was filed outside the applicable statute of limitations of one year. On appeal, a panel of this court reversed and remanded the case to the trial court for the appointment of counsel and for a hearing to determine if due process concerns tolled the statute of limitations. *See Ruben Pimentel v. State*, No. M2009-00668-CCA-R3-PC, 2010 WL 271160 at *2 (Tenn. Crim. App. Jan. 22, 2010). In addition, this court instructed the trial court to determine whether the filing of the petition in 2009 was within the reasonable opportunity allowed by due process tolling of the statute of limitations *if* due process concerns required a reasonable tolling of the statute of limitations. *Id*. Upon remand, counsel was appointed, a hearing was held, and the trial court again dismissed the petition, from which order Petitioner appeals *pro se*, after waiving his right to counsel. After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J. and NORMA MCGEE OGLE, J., joined.

Ruben Pimentel, *Pro Se*.

Robert E. Cooper, Jr., Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; Rodney Strong, District Attorney General *Pro Tem*, for the appellee, State of Tennessee.

**OPINION**

In the prior opinion of this court in Petitioner's case, the following history of the case and summary of relevant allegations of the post-conviction petition were set forth as follows.

> The petitioner pleaded guilty to the three felony offenses in 2005, agreeing to an effective sentence of life imprisonment without the possibility of parole plus 25 years. The lengthy post-conviction petition, filed in 2009, raised issues of ineffective assistance of counsel, involuntary and knowing [sic] guilty pleas, the withholding of exculpatory evidence, newly discovered scientific evidence, and other issues. In addition, the sworn petition alleged that, due to his mental illness or defect, the petitioner was unable to file his petition within the one-year statute of limitations imposed by Tennessee Code Annotated section 40-30-102(a). He identified the location of medical records in as many as six healthcare facilities in addition to the records held by the Tennessee Department of Correction and the names of seven prospective affiants who could "support [his] inability to understand [his] legal rights and liabilities at relevant time periods associated with the plea submission hearing and filing of this post-conviction petition." He alleged a history of psychosis and of various mental disabilities.

*Id*. at *1

At the subsequent hearing in the trial court, Petitioner and the two attorneys ("lead counsel" and "second counsel") testified. There was minimal testimony concerning the explicitly described issue for determination on remand, i.e., whether the statute of limitations should be tolled. Lead counsel testified that Petitioner understood what lead counsel said to him when discussing particular aspects of the negotaited plea offer. He also testified that Petitioner was "a very bright individual" and that Petitioner understood the explanations given for the forty or so pre-trial motions filed by trial counsel. Lead counsel stated that Petitioner fully understood the constitutional rights he was going to waive by entering into the plea agreement.

Lead counsel added that a mental evaluation of Petitioner was performed because that was a standard procedure in all cases where the State had filed notice of its intent to seek the death penalty. Lead counsel was asked if there was a "mental health issue" which raised a question whether Petitioner could understand or comprehend what was "going on." Lead counsel responded, "No, sir."

Second counsel testified that he recalled that the defense team's very experienced investigator "had uncovered a period of time, a short period of time that [Petitioner] was hospitalized for either some type of drug and alcohol treatment or mental health treatment sometime, as I recall, near 1999 to 2000 and that was in the documents we were provided." He and lead counsel took this information into consideration when considering whether a plea of insanity was a viable defense and then concluded it would not be a successful defense.

Petitioner was the third and final witness who testified during his presentation of proof at the post-conviction hearing. Petitioner testified that at the time of his arrest for the offenses which resulted in his convictions, he was taking Zoloft, Paxil, Effexor, Valium, and hydrocodone 7.5 pursuant to prescriptions. He said "the county jail" took him off those medications and prescribed other psychotropic medications, which caused the "days and the events" to be a "blur." Petitioner answered affirmatively when asked if he did not recall what he was doing and was not in the right state of mind to enter into his guilty pleas.

On cross-examination by the State, Petitioner admitted that at the time he pled guilty in June 2005, he remembered many details of the facts leading to the crimes he was charged with committing. Petitioner testified that he was not aware that he could challenge the convictions through post-conviction proceedings until another inmate (Petitioner called him the "law practitioner") told him so in 2007 or 2008. Petitioner admitted that he waited approximately two years after this to file his petition for post-conviction relief.

As to his own personal condition when he was transported to the state penitentiary in June 2005, Petitioner testified he was "not okay." Petitioner elaborated that he was seeing "the psychiatrist at the penitentiary" (otherwise unidentified) who "made statements" that Petitioner was "suffering from psychosis at the time."

After the conclusion of presentation of the proof, the trial court dismissed the post-conviction petition, and, as pertinent to this appeal, stated as follows:

> I find nothing in front of me that says that there are due process principles that were not met in this case or that were avoided or occurred that would keep [Petitioner] from filing a post-conviction, petition for post-conviction relief within the appropriate time frame.

The hearing after remand was held May 25, 2011, and on October 26, 2011, the trial court entered a "Final Order" that states in part, "There is no evidence to support the claim that due process principles tolled the statute of limitations due to medical issues, therefore, the Petition for Post-Conviction Relief is denied."

No documents or other tangible items were admitted, or offered, into evidence during the post-conviction hearing. On April 11, 2012, approximately ten and one-half months after the post-conviction hearing, the trial court held another hearing, per the order of this court, for a determination of whether Petitioner was knowingly and intelligently waiving his right to counsel on appeal. At this "waiver of counsel hearing" the trial court allowed Petitioner to file exhibits to "this hearing." This collective exhibit contains copies of at least eight letters from him to his post-conviction counsel, a copy of a complaint, hand-dated December 27, 2011, filed against post-conviction counsel with the Tennessee Board of Professional Responsibility, copies of appellate decisions (including this court's prior opinion in Petitioner's case), and various other documents. Petitioner relies on this exhibit in his appellate brief in support of an argument that he is entitled to relief because his post-conviction counsel provided deficient representation at the post-conviction hearing. Petitioner's argument is misplaced. In Tennessee, petitioners are not entitled to obtain relief for ineffective assistance of counsel during post-conviction proceedings. *See House v. State*, 911 S.W.2d 705, 712 (Tenn. 1995) ("There being no constitutional right to counsel in post-conviction proceedings, it follows that there is no constitutional right to effective assistance of counsel in post-conviction proceedings.") Petitioner asserts that *Martinez v. Ryan*, 566 U.S. _____ , 132 S.Ct. 1309 (2012) stands for the proposition that he was entitled to constitutionally effective assistance of counsel in his post-conviction proceedings. *Martinez* does not offer relief to Petitioner. As stated in that opinion, the issue determined was limited to whether ineffective assistance of counsel in a "collateral proceeding on a claim of ineffective assistance at trial may provide cause for a *procedural default in a federal habeas corpus proceeding.*" *Id*. at 1315. (emphasis added).

Petitioner also raises as issues on appeal that the trial court erred when it "ignored" his request, contained in his petition for post-conviction relief, that he have a delayed appeal from his guilty pleas. Petitioner was not entitled to an appeal as of right from his guilty pleas. Tenn. R. App. P. 3(b); *State v. Lane*, 254 S.W.3d 349, (Tenn. 2008)("Unlike civil litigants, who have an appeal as of right from any final judgment, parties in criminal cases do not always have an appeal as of right under the Rules of Appellate procedure."). Furthermore, this issue was not raised during the hearing in the trial court, and will not be considered for the first time on appeal. Petitioner is not entitled to relief in this claim. In a similar vein, Petitioner asserts he is entitled to relief in this appeal because his original trial counsel did not properly withdraw as counsel following entry of Petitioner's guilty pleas and also did not "make any attempt to appeal from the plea agreement." Petitioner quotes and relies upon Tennessee Rule of Criminal Procedure 37(e)(3) as authority for his unique theory for relief. That rule states:

> (3) APPOINTED COUNSEL FOR INDIGENT DEFENDANT - Pursuant to Tenn.
> Sup. Ct. Rule 13, § 1(e)(5), counsel appointed in the trial court to represent

> an indigent defendant shall continue to represent the defendant throughout the proceedings, including any appeals, **until the case has been concluded** or counsel has been allowed to withdraw by a court.

(emphasis added).

Petitioner's case concluded upon entry of his guilty pleas pursuant to a negotiated plea agreement. His complaint about trial counsel is without merit. Petitioner is not entitled to relief on this issue.

Finally we address Petitioner's issue which asserts that the trial court erred by again dismissing his petition because it was filed long after the statute of limitations had expired. Tennessee Code Annotated section 40-30-102(a) provides that, with three exceptions not applicable in Petitioner's case, a petition for post-conviction relief must be filed within one year of when the judgment attacked becomes final, if no appeal is taken as in Petitioner's case. However, while the statute of limitations is constitutional (even though it bars consideration of any untimely filed petition), the supreme court has recognized that in certain cases *application* of the statue of limitations might violate a petitioner's constitutional right to due process. *See Williams v. State*, 44 S.W.3d 464, 468 (Tenn. 2001). In *Williams* the court remanded a petitioner's statutorily untimely filed post-conviction case back to the trial court

> for an evidentiary hearing to determine (1) whether due process tolled the statute of limitations so as to give the appellee a reasonable opportunity after the expiration of the limitations period to present his claim in a meaningful time and manner; and (2) if so, whether the appellee's filing of the post-conviction petition in October 1996 was within the reasonable opportunity afforded by the due process tolling.

*Id*. at 471.

This language from *Williams* formed the essentially identical instruction for the trial court's determination of the statute of limitations issue in Petitioner's case. *Ruben Pimentel*, 2010 WL 271160, at *2. From its plain reading, both "prongs" of the inquiry must be satisfied favorably for a petitioner in order for the statute of limitations to be tolled. In Petitioner's case, as the trial court determined, there was no proof offered at the hearing of any impairment or other factor which triggered a tolling of the statute of limitations. Furthermore, even if such facts had been proven, by his own testimony, Petitioner recognized his right to attack his convictions by post-conviction proceedings in *2007*. Yet, he delayed until March *2009* to file a petition attacking the judgments entered as a result of his guilty

pleas in June *2005*. This delay would not have been "within the reasonable opportunity [of time]," *Williams*, 44 S.W.3d at 471, afforded by due process tolling, if that tolling had in fact been necessary.

In conclusion, we determine that Petitioner failed to prove that he was entitled to have the statute of limitations tolled in his case. The judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE